## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **ANGELA SMITH**, | 2:18-CV-10162-TGB |
| Plaintiff, | |
| vs. | **ORDER** |
| | **(1) GRANTING DEFENDANT UNITED STATES DEPARTMENT OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT, AND** |
| **PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY and** | |
| **UNITED STATES DEPARTMENT OF EDUCATION**, | **(2) GRANTING IN PART AND DENYING IN PART DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Plaintiff Angela Smith was the victim of identity theft in January 2014 when someone used her name, social security number, and date of birth to obtain four educational loans to attend Indiana Institute of Technology. Defendant Pennsylvania Higher Education Assistance Agency, d/b/a FedLoan ("Defendant FedLoan") serviced the loans until

November 2016, when they were transferred to Defendant United States Department of Education ("Defendant USDOE") for servicing.

On January 15, 2018, Plaintiff filed this lawsuit against Defendants for violating the Fair Credit Reporting Act ("FCRA") and the Michigan Regulation of Collection Practices Act ("MRCPA") based on the Defendants' conduct surrounding Plaintiff's dispute of the debts. Defendants have each moved for summary judgment on separate grounds. Defendant USDOE argues that it is immune from suit pursuant to the doctrine of sovereign immunity. Defendant USDOE's Motion for Summary Judgment, ECF No. 71. Defendant FedLoan argues that Plaintiff cannot recover because she has not sustained any damages or, alternatively, that its investigation of Plaintiff's dispute was reasonable as a matter of law. Defendant FedLoan's Motion for Summary Judgment, ECF No. 72.

For the reasons below, Defendant United States Department of Education's Motion for Summary Judgment (ECF No. 71) will be **GRANTED.** Defendant FedLoan's Motion for Summary Judgment (ECF No. 72) will be **GRANTED in part and DENIED in part**.

## I.  Facts[1]

In March 2015, Plaintiff received a letter in the mail from Defendant Fedloan that listed student loan debts that Plaintiff did not recognize. Plaintiff's Response to Defendant FedLoan's Motion for Summary Judgment, ECF No. 81 PageID.2333. Plaintiff has never had any student loans. *Id.* Plaintiff obtained a copy of her credit report and contacted Defendant FedLoan via telephone to tell them that the debts did not belong to her. Plaintiff's Deposition, ECF No. 72-6 PageID.1484. After that call, on FedLoan's advice, Plaintiff filed a police report for identity theft. *Id.* FedLoan then sent Plaintiff a packet of documents to fill out to support her claim of identity theft and requesting a copy of the police report she filed, noting that "[f]ailure to enclose a copy of the police report will result in us taking no further action on your claim of identity theft." Fraud Packet, ECF No. 72-8.  FedLoan sent an identical set of documents to Plaintiff again in August 2015. Plaintiff's Deposition, ECF

---

[1] Because Defendant USDOE's Motion for Summary Judgment is founded on the argument that Congress did not waive sovereign immunity in the FCRA, the Court has omitted facts about USDOE's investigation of Plaintiff's disputes. The focus must rather be on the communications between Plaintiff and FedLoan, and the Court will reference communications between Plaintiff and USDOE only where those communications could arguably bear on the reasonableness of FedLoan's investigation.

No. 72-6 PageID.1485. Plaintiff did not return either fraud packet and she did not send a copy of the police report to Defendant FedLoan. *Id*.

Plaintiff did, however, continue to dispute that the debts listed on her credit report in fact belonged to her. She sent two letters to Defendant FedLoan on May 12, 2017 and August 22, 2017 stating: "I do not have an account with you. I have never had an account with you . . . These are not my accounts." ECF No. 72-11 PageID.1607; PageID.1534. On the same dates, Plaintiff also sent dispute letters to Defendant USDOE with similar information, stating "I did not sign, apply [for] or authorize [] this loan," *Id*. at PageID.1600, and "I did not borrow any money to attend school nor do I know who did . . . nor do I have any idea what dates they allegedly attended . . . I did not borrow anything from you and I did not sign anything authorizing these debts." *Id*. at PageID.1604. In her second letter to Defendant USDOE, Plaintiff specifically states that she is not alleging that the loans were fraudulently obtained. *Id*. In this letter, she also states that she did not file a police report alleging fraud, although a police report from March 2015 is in the record. *Id*. On June 12, 2015, Defendant FedLoan informed Plaintiff in writing that it had verified that the debts listed did belong to her.

During this time, Plaintiff also sent lengthy dispute letters to various credit reporting agencies, which she included in her direct correspondence with both Defendants. These letters to the credit reporting agencies are dated April 1, 2016, December 3, 2016, February 25, 2017, May 12, 2017, and August 22, 2017. Correspondence, ECF No. 72-11 PageID.1535–1607. In her letters to the credit reporting agencies, Plaintiff disputed numerous aspects of the information listed on her credit report, including her address, date of birth, and educational history, and always stating that the four FedLoan debts on her credit report did not belong to her. *Id.*

In response to Plaintiff's dispute letters sent directly to the credit reporting agencies, each agency generated an electronic report of the dispute called an Automated Consumer Dispute Verification ("ACDV"). Leslie Harris' Deposition, ECF No. 72-4 PageID.1195–96. Each ACDV was forwarded to Defendant FedLoan. *Id.* None of the ACDVs used the dispute code for an allegation of identity theft or fraud. Instead, the ACDVs in the record use dispute codes 001—"loan not his/hers" or 002—"belongs to another individual with the same or similar name." ACDVs, ECF No. 72-13. Defendant FedLoan "reviewed the underlying loan

document and confirmed that it contained Plaintiff's correct date of birth, name and social security number" when it received the ACDVs. FedLoan's Motion for Summary Judgment, ECF No. 72 PageID.879–80 (citing Leslie Harris' Deposition, ECF No. 72-4 PageID.1306; ACDVs, ECF No. 72-13 *response code section*). Because the underlying loan document did contain Plaintiff's correct information, Defendant FedLoan concluded that Plaintiff's dispute was unfounded and continued to report the disputed debts. *Id*. FedLoan performed the same investigation in response to each of Plaintiff's disputes. ECF No. 72 PageID.888. In May 2018, Defendant USDOE informed Defendant FedLoan that the debts were fraudulently obtained. Plaintiff's Declaration, ECF No. 81-2 PageID.2360. Based on that information, Defendant FedLoan requested that the credit reporting agencies delete the debt from Plaintiff's credit report. *Id*.

Defendant FedLoan communicated with Plaintiff several times regarding the fraudulent loans and Plaintiff's purported obligation to pay them. On March 12, 2015, Defendant sent Plaintiff two letters, one notifying her that her payments were "past due," ECF No. 81-6 PageID.2525, and one stating that "[FedLoan] may negatively credit

report you," ECF No. 81-7 PageID.2529. Defendant sent similar letters on June 26, 2015 and August 11, 2015. ECF No. 81-8–81-9. On July 11, 2016, Defendant sent Plaintiff a letter stating that Plaintiff had ignored Defendant's "repeated attempts to resolve the delinquency" and as a result "must now pay the loans IN FULL." ECF No. 81-11 PageID.2545. On August 12, 2016, Defendant sent Plaintiff a final letter stating that her loans had defaulted. This letter states:

> Your failure to pay your federal student loans is a severe violation of the terms and conditions of your federal student loan agreement. Defaulted federal student loans are not released or forgiven. The U.S. Government pursues defaulted borrowers until the owed amounts are collected.
>
> Consequences of default include ineligibility for federal student financial aid. In addition, you account may soon be sent to the U.S. Department of Education's Default Resolution Group for additional collection activities, which may include:
>
> - Wage garnishment.
> - Offset your federal student loan debt against your federal tax return.
> - Possible legal action by the United States Department of Justice.
> - Assessment of collection costs and fees.
> - Credit bureaus will be notified, and your credit rating may suffer.
>
> Please contact our experienced loan counselors immediately to take the appropriate action. We

> may still be able to offer assistance before the
> negative consequences described above take effect.

ECF No. 81-12 PageID.2546.

Plaintiff testified that she had a mortgage on her home in Wyandotte during the time that the fraudulent debts were listed on her credit report—from 2015 to 2018. Plaintiff's Deposition, ECF No. 72-6 PageID.1483. During that time, her mortgage servicer did not raise any concerns to her about her credit. *Id.* In fall 2015, Plaintiff obtained a car lease without incident. *Id.* at PageID.1483–84. She sold her home in October 2018 and obtained a mortgage to purchase a different home, also without incident. *Id.* Around the same time, she obtained another car lease. *Id.* Although the fraudulent loans did appear on her credit report at the time she obtained the 2015 car lease, the information was not yet derogatory—the debts were not past due at that time. Response, ECF No. 81 PageID.2337. She did not apply for any credit while the debts were reported as past due. Plaintiff's Declaration, ECF No. 81-2 PageID.2362. And during the entire time-period when the fraudulent debts were reported on her credit report, she avoided applying for new lines of credit unless it was absolutely necessary because she feared rejection. Plaintiff's Deposition, ECF No.72-6 at PageID.1488.

Plaintiff states in her declaration that the "experience of dealing with" FedLoan's alleged violation of the FCRA was "extraordinarily distressing." Plaintiff's Declaration, ECF No. 81-2 PageID.2362. She experienced headaches, stress, crying, anguish, and disruption of her normal activities. *Id.* However, Plaintiff did not seek medical attention for these symptoms. Plaintiff's Deposition, ECF No. 72-6 PageID.1488. In addition, she spent time and energy attempting to rectify the reporting error that she would "have otherwise spent on other pursuits." Plaintiff's Declaration, ECF No. 81-2 PageID.2362.

## II.  Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

As the moving party, Defendants have the initial burden to show that there is an absence of evidence to support Plaintiff's case. *Selby v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552.

## III. Analysis

### a. Defendant USDOE is immune from suit under the FCRA.

The federal government is immune from suit at common law. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). As a federal agency, the Department of Education has the same presumption of immunity from suit. *See, e.g.*, *United States Department of Energy v. Ohio*, 503 U.S. 607

(1992) (finding sovereign immunity in favor of the agency). Citizens, through their elected representatives assembled in Congress, can waive sovereign immunity in specific statutes if the waiver is "unequivocally expressed in statutory text." *Federal Aviation Administration v. Cooper*, 566 U.S. 284, 290 (2012) (citing cases). In order to be effective, the scope of Congress' waiver must "be clearly discernable from the statutory text in light of traditional interpretive tools. If it is not, then we take the interpretation most favorable to the Government." *Id.* at 291.

Plaintiff charges that Defendant USDOE violated 15 U.S.C. § 1681s-2(b), which sets forth the duties of any person who furnishes credit information. Sections 1681n and 1681o impose liability upon any "person" for willful and negligent violations of the statute. The statute defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, *government* or *governmental subdivision or agency*, or other entity." 15 U.S.C. § 1681a(b) (emphasis added). Yet Defendant argues that this does not amount to an unequivocal waiver of sovereign immunity. As discussed below, the federal Circuit Courts of Appeal are split on the question of whether this language operates as an unequivocal waiver of sovereign immunity, and there is no governing

11

precedent from the Sixth Circuit. After reviewing the relevant law, the Court finds Defendant's position the most persuasive: the statute does not clearly and unequivocally waive sovereign immunity using the kind of language that is commonly recognized as sufficient.

The earliest circuit decision on the issue is *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014), which finds the statutory language sufficient to waive sovereign immunity. In *Bormes*, the Seventh Circuit used the Government's admission that it is subject to the FCRA's *substantive* requirements to hold that the Government is likewise subject to the penalty and enforcement provisions. And the court of appeals also relied on a plain reading of the definition of "person" alongside the penalties subsections to conclude that Congress had waived sovereign immunity. But the *Bormes* decision fails to engage in a detailed discussion of several applicable legal doctrines that subsequent appellate decisions have found important.

In *Robinson v. United States*, a case virtually identical to the one currently before this Court, the Fourth Circuit reached a conclusion opposite to that of *Bormes. See* 917 F.3d 799 (4th Cir. 2019). *Robinson* is based on three premises: (1) the term "person" is not normally read to

include the sovereign; (2) the language found in other federal statutes waiving sovereign immunity is much clearer and more explicit than that which is used in the FCRA; and (3) a reading of the enforcement provisions as a whole that waived sovereign immunity would lead to absurd results, such as allowing criminal prosecution of the federal government. The *Robinson* court's reasoning is convincing.

In brief, *Robinson* relies first on a long line of cases that affirm that the word "person" ordinarily does not mean the sovereign. *E.g. Vt. Agency of Nat. Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 780 (2000). Although the definition of "person" in the FCRA *does* include the federal government, and it cannot be denied that the government is bound to follow the FCRA's requirements, the question still is whether the sovereign may be sued for failing that obligation. *Robinson* also provides legal support for the argument that this observation is not dispositive. 917 F.3d at 802–03 ("In settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition." (quoting *Bond v. United States*, 572 U.S. 844, 861 (2014))).

Second, statutes that courts have recognized as unequivocally waiving sovereign immunity, such as the Federal Tort Claims Act, do so much more explicitly than the FCRA. For example, the FTCA states, "The United States [is] liable . . . in the same manner and to the same extent as a private individual under like circumstances, but [not] liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 1346(b). This suggests that the FCRA's more subtle language is *not* an unequivocal waiver. *Robinson*, 917 F.3d at 803; *see also Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 772 (9th Cir. 2018) (finding that the FCRA did not waive sovereign immunity for monetary liability).

And finally, reading the FCRA to permit enforcement against the United States would lead to absurd results, such as criminal prosecution of the sovereign under 15 U.S.C. § 1681q. Plaintiff admits that such a result would be absurd, but argues that the Court should interpret the statute piecemeal, holding for today that only certain private enforcement actions may proceed against the Government, while leaving for another day the question of whether a criminal action could be brought against the federal government. Response, ECF No. 80 PageID.2255, 2259. But courts "must interpret statutes as a whole,

giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Keeley v. Whitaker*, 910 F.3d 878, 884 (6th Cir. 2018) (quoting *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998)). An interpretation permitting one type of enforcement action but prohibiting another would be an inconsistent interpretation of the statute.

Importantly, the same logic does not compel the Court to interpret the word "person" to exclude the Government in the *substantive* portions of the FCRA. "Congress is free to waive the Federal Government's sovereign immunity against liability without waiving its immunity from monetary damages awards." *Lane v. Pena*, 518 U.S. 187, 196 (1996) (finding that Congress waived sovereign immunity for suits seeking equitable relief under the Rehabilitation Act of 1973, but not for suits seeking monetary damages). The Government's position in the instant case is consistent with *Lane*.

For the reasons above, the Court finds that Congress did not waive sovereign immunity in the penalties portion of the FCRA. Therefore, the Department of Education is immune from suit for

damages. Plaintiff withdrew her claims against Defendant USDOE for liability under the Michigan Regulated Collection Practices Act (MRCPA) in her Response, ECF No. 80 PageID.2260, so no claims against this Defendant remain.

b. *Plaintiff has presented facts from which a reasonable jury could infer compensable emotional distress.*

Defendant FedLoan argues that Plaintiff cannot maintain an action for negligent violation of the FCRA where she has not shown that she suffered any actual damages, citing 15 U.S.C. § 1681o (providing the remedy of "actual damages sustained by the consumer" for negligent violations of the FCRA). This is an accurate statement of the law. But Plaintiff *has* provided facts from with a reasonable jury could find that she suffered actual damages.

Plaintiff alleges that she suffered severe emotional distress during the three years that the fraudulent loans were erroneously reported on her credit report. Plaintiff's Declaration, ECF No. 81-2 PageID.2362. Although she did not seek medical attention for the symptoms of her distress, a plaintiff is not required to provide medical evidence to recover for emotional distress. *See Smith v. LexisNexis Screening Solutions, Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (finding the record of emotional distress

sufficient to support the jury's verdict awarding damages where the plaintiff and his wife testified about Plaintiff's emotional distress with more than "mere conclusory statements").

Relying upon a Second Circuit case, *Casella v. Equifax Credit Information Services*, 56 F.3d 469 (2d Cir. 1995), Defendant argues that Plaintiff cannot recover for emotional distress where she failed to show that "any potential creditor or other person in [her] community learned of any harmful information from [Defendant]." *Casella*, 56 F.3d at 475. But Plaintiff applied for an auto lease in fall 2015, after the fraudulent loans had appeared on her credit report for at least six months. Therefore, Plaintiff has shown that at least one potential creditor saw the debts reported on Plaintiff's credit report. Plaintiff's Deposition, ECF No. 72-6 PageID.1483–1484. Plaintiff notes in her response that she obtained this auto lease before the debts were "negative[ly] reporting," which did not occur until February 2016. ECF No. 81 PageID.2342. But neither party has specifically argued that pre-delinquency reporting is *not* "harmful information," using the wording of the *Casella* rule.

Although the debts did not prevent Plaintiff from obtaining credit, denial of credit is not a prerequisite to recovery for emotional distress.

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 13929, 1333 (9th Cir. 1995); *cf. Casella*, 56 F.3d at 475 (denying Plaintiff recovery because no person *learned* of the harmful information, *not* because Plaintiff was never denied credit due to the harmful information).[2]

Drawing all inferences in Plaintiff's favor, she has provided facts sufficient to allow a reasonable jury to conclude that she has incurred actual damages.

    c. *Plaintiff has presented facts from which a jury could find that Defendant's investigation of her dispute was negligently or recklessly unreasonable.*

Plaintiff has alleged that Defendant FedLoan violated 15 U.S.C. § 1681s-2(b), which reads in part:

> (1) After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

---

[2] During oral argument on this Motion, counsel directed the Court to *Thompson v. Equifax*, No. 2:18-cv-12495, ECF No. 40 PageID.357 (E.D. Mich. May 9, 2019). In this Order, this Court granted a motion to compel discovery of the plaintiff's credit score over the last three years. The Order held that such information was discoverable because it was relevant to the plaintiff's injury. In dicta, the Court opined that the information could be relevant "to the extent that" Plaintiff's injury must be tied to the effect that the errant debt reporting had on her credit score. The Court's previous Order did not—and did not need to—determine whether a claim for emotional distress was cognizable without evidence that Plaintiff's credit score was harmed. Instead, the Court found only that such information would be relevant to the question of injury.

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

\* \* \*

In order to comply with the investigation requirement of the FCRA, a furnisher of credit information must conduct a *reasonable* investigation. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012). "[H]ow thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Id.* at 617. If a furnisher of information's investigation is negligently unreasonable, as noted in the subsection above, the consumer may recover actual damages pursuant to 15 U.S.C. § 1681o. If the investigation is *willfully* unreasonable, a consumer may recover statutory damages pursuant to 15 U.S.C. § 1681n. And "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a statute, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551, U.S. 47, 51 (2007). How

thorough an inquiry must be to be "'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Boggio*, 696 F.3d at 617.

Reasonableness of an investigation is generally a question for the jury to decide. *Guimond*, 45 F.3d at 1333, *accord Ricketson v. Experian Info. Solutions*, 266 F. Supp. 1083, 1093 (W.D. Mich. 2017). This is the case unless the evidence "is so one-sided that one party must prevail as a matter of law." *Boggio*, 696 F.3d at 614.

Defendant argues that Plaintiff's statements that she was not claiming that the loans were fraudulently obtained rendered Defendant's investigation of her disputes reasonable as a matter of law. This argument is unavailing.

Defendant FedLoan received lengthy correspondence from Plaintiff detailing her claims that the accounts listed did not belong to her. In this case, some of the CRAs forwarded Plaintiff's correspondence to Defendant FedLoan along with the ACDVs, as Defendant stated during oral argument, and Plaintiff copied Defendant on her dispute letters to the CRAs, *e.g.* ECF No. 72-11 PageID.1533–35. There is no question that Defendant was aware of the details of Plaintiff's disputes via one or both

of these avenues. And Plaintiff's letters provided *extensive* information that would be relevant to an investigation of her dispute and that would lead a person who read and considered her letters to conclude that Plaintiff's true complaint was one of identity theft or fraud. A reasonable jury could find that Defendant's investigation—merely matching Plaintiff's identifying information with the information listed on the master promissory note and nothing more—was not reasonable given all the information included in Plaintiff's letters that would tend to indicate that she was the victim of identity theft. This a question of fact for the jury to decide after considering the evidence.

This is true notwithstanding Plaintiff's assertion that she was *not* claiming identity theft. Indeed, Plaintiff had no direct knowledge that she had been the victim of identity theft. It is understandable, then, that she would be hesitant to make such an accusation. *Boggio* makes clear that the depth of the investigation required is a sliding scale based on the information provided by the consumer. Here, Plaintiff provided voluminous information; the jury should evaluate it and consider whether the investigation was reasonable in that context.

*d. There is no genuine issue of material fact as to whether Defendant FedLoan misrepresented information to Plaintiff in a manner violating the MRCPA.*

The MRCPA makes it unlawful to misrepresent the "legal status of a legal action being taken or threatened," "[t]he legal rights of the creditor or debtor," or "that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property." Mich. Comp. Laws § 445.252(f). Plaintiff argues that Defendant's communication with her misrepresented each of these matters.

Defendant's statements in its letters to Plaintiff were not misrepresentations. Each statement, detailed in Section I, *supra*, was true—Plaintiff does not specifically deny this in her Response to Defendant's Motion. The only misrepresentation, if it can be called that, was that the loans belonged to Plaintiff at all—forming the basis for all of Defendant's communications with Plaintiff. Plaintiff has presented no case law supporting her contention that failing to uncover identity theft and acting upon the assumption that loans belong to the person listed on the loan documents constitutes a violation of MRCPA's prohibition on misrepresentations. And to the extent that the alleged violation of the

MRCPA flows from Defendant's alleged failure to comply with the FCRA, that claim is preempted by the FCRA. *See* 15 U.S.C. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . .").

Based on the foregoing, Defendant FedLoan's Motion for Summary Judgment is **GRANTED** as to the MCRPA claim only.

## IV.    Conclusion

For the foregoing reasons, Defendant USDOE's Motion for Summary Judgment (ECF No. 71) is **GRANTED**. This Defendant is **DISMISSED** from the case. Defendant FedLoan's Motion for Summary Judgment (ECF No. 72) is **GRANTED in part and DENIED in part**.

**SO ORDERED.**

DATED July 17, 2019.

BY THE COURT:

/s/Terrence G. Berg

TERRENCE G. BERG
United States District Judge